Phil Horowitz (State Bar #111624)
Law Offices of Phil Horowitz
One Market Plaza
Steuart Tower, Suite 2630
San Francisco, California 94105
Telephone: (415) 391-0111
Facsimile: (415) 391-0123
E-mail: phil@creative.net

Attorneys for Plaintiff
Tim Duvall

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM DUVALL, | Case No. C07-03714 JCS |
| Plaintiff, | PLAINTIFF TIM DUVALL'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFF'S ORIGINAL COMPLAINT |
| v. | |
| GALT MEDICAL CORP., THERAGENICS CORPORATION, JIM EDDINGS, and DOES 1 through 99, inclusive, | DATE: October 5, 2007<br>TIME: 9:30 a.m<br>DEPT: Courtroom A, 15th Floor |
| Defendants. | |

1. <u>Introduction</u>

Plaintiff Tim Duvall agreed to accept a lower salary as Vice President of Marketing in return for stock options. Mr. Duvall's signed written employment agreement sets forth this agreement. Instead of honoring this agreement, defendants refused to honor Mr. Duvall's stock option agreement and purported to extinguish his stock options. Indeed, it appears that defendants never intended to honor the stock option agreement in this first place. This lawsuit resulted. Defendants have now moved to dismiss some of the claim in plaintiff's complaint on a few different grounds. Those grounds are discussed in separate sections below, one by one.

2.  **Defendant Theragenics' Motion to Dismiss the Contract and Covenant Causes of Action Against It Should Be Denied Because Plaintiff Was a Third Party Beneficiary of the Stock Purchase Agreement**

Defendant Theragenics moved to dismiss plaintiff Tim Duvall's third and fourth causes of action, for breach of contract and breach of the covenant of good faith and fair dealing, on a single ground.  Defendant claims that Mr. Duvall was not an intended third party beneficiary of the Stock Purchase Agreement he seeks to enforce against defendant Theragenics.

Plaintiff Tim Duvall owned stock options for 100,000 shares of Galt Medical Corp. (Complaint ¶23.)  Defendant Theragenics entered into a written Stock Purchase Agreement to purchase 100% of the stock and stock derivatives (including stock options) of Galt Medical Corp.  (Complaint ¶41.[1])

Defendant Theragenics agreed to pay stock option owners, at the closing of the sale, the portion of the $34,000,000 purchase price "allocable to the number of Company shares subject to the option," subtracting "the aggregate applicable exercise price" and "reduced by any required tax withholding." (Complaint ¶42.[2])   In return, the Stock Purchase Agreement provided that "<u>all</u> Company Stock Derivatives shall cease to be outstanding, shall be cancelled, retired, and shall cease to exist, and each holder of Company Stock Derivatives shall cease to have rights with respect to such Company Stock Derivatives..." [Emphasis added.] (Stock Purchase Agreement, pp. 11-12 (Section 2.02).)

Accordingly, Plaintiff Tim Duvall was an intended third party beneficiary of the Stock Purchase Agreement, even though he did not sign it as a party, and therefore entitled to enforce it.

---

[1] <u>See also</u> the Stock Purchase Agreement at p. 1 (Recitals), p. 2 (definition of "Benefit Plan"), p. 3 (definition of "Company Stock Derivatives"),  pp. 11-12 (Section 2.02), p. 13 (Section 2.09), p. 14 (Section 3.02), p. 27 (Section 3.16(d)), p. 28 (Section 3.17), and p. 37 (Section 3.33).)

[2] <u>See also</u> the Stock Purchase Agreement at p. 12 (Section 2.04 (iii)).

Plaintiff's Memorandum in Opposition to Motion to Dismiss          Case No. C07-03714 JCS

1    Despite all these facts, defendant Theragenics argues that Mr. Duvall was
2 not an intended third party beneficiary of the Stock Purchase Agreement. In
3 making this argument, defendant seeks to have the Court disregard all of the
4 Stock Purchase Agreement's language except for a single sentence (p. 50,
5 Section 8.04, third sentence) and the omission of Mr. Duvall's name from a one-
6 page attachment (Schedule 1).

7    Whether someone is an intended third party beneficiary of a contract
8 cannot be properly determined by examining minuscule excerpts from the
9 contract in isolation from the rest of the contract:

> "In making that determination [of whether the plaintiff is an intended third party beneficiary], the court must read the contract <u>as a whole</u> in light of the circumstances under which it was entered. [Emphasis added; citations omitted.]" <u>Neverkovec v. Fredericks</u>, 74 Cal.App.4th 337, 349 (1999).

> "whether a third party is an intended beneficiary... to the contract involves construction of the parties' intent, gleaned from <u>reading the contract as a whole</u> in light of the circumstances under which it was entered." [Emphasis added.] <u>Jones v. Aetna Casualty & Surety Co.</u>, 26 Cal.App.4th 1717, 1725.

    In making its argument that Mr. Duvall was not an intended third party
beneficiary, defendant also seeks to have the Court disregard all of the
circumstances surrounding the Stock Purchase Agreement, including its purpose
of purchasing 100% of Galt's stock and stock derivatives, its negotiating history
and the parties' intent.

    Whether someone is an intended third party beneficiary of a contract
cannot be properly determined by examining only the contract itself without also
considering the purpose of the contract and the circumstances under which the
contract was made:

> "In determining the meaning of a written contact allegedly made, in part, for the benefit of a third party, evidence of the circumstances and negotiations of the parties in making the contract is both relevant and admissible." <u>Garcia v. Truck Insurance Exchange</u>, 36 Cal.3d 426, 437.

> "Because the court must consider the circumstances of the contracting parties' negotiations to determine whether a third party not named in the release was an intended beneficiary, it will seldom be sufficient for the third party to rely on a literal application of the terms of the release." Neverkovec v. Fredericks, 74 Cal.App.4th 337, 349 (1999).

On its very face, the Stock Purchase Agreement as a whole shows its purpose to be for Theragenics to acquire and pay the owners for 100% of the stock and stock derivatives of Galt Medical Corp. Given that Mr. Duvall was one of the owners of Galt Medical Corp. stock derivatives, this made Mr. Duvall part of the intended class of third party beneficiaries.

It has long been black letter law in California that someone who is a member of a class of people for whose benefit a contract was made is an intended third party beneficiary. Garratt v. Baker, 5 Cal.2d 745, 747 (1936); Neverkovec v. Fredericks, 74 Cal.App.4th 337, 348-349 (1999); Outdoor Services, Inc. v. Pabagold, 185 Cal.App.3d 676, 681 (1986); Steve Schmidt & Co. v. Berry, 183 Cal.App.3d 1299, 1313 (1986); Division of Labor Law Enforcement v. Davis, 81 Cal.App.2d 306, 369 (1947).

Defendants also argue that Mr. Duvall could not be an intended third party beneficiary because his name is not listed in the Agreement. That is decidedly not the law. Garratt v. Baker, 5 Cal.2d 745, 747 (1936); Neverkovec v. Fredericks, 74 Cal.App.4th 337, 348-349 (1999); Outdoor Services, Inc. v. Pabagold, 185 Cal.App.3d 676, 681 (1986); Steve Schmidt & Co. v. Berry, 183 Cal.App.3d 1299, 1313 (1986); Division of Labor Law Enforcement v. Davis, 81 Cal.App.2d 306, 369 (1947).

Taking one sentence out of context (p. 50, Section 8.04, third sentence), defendant Theragenics argues that it did not intend to benefit any third parties at all, including Mr. Duvall. However, rote contractual recitals such as these are disregarded when the practical reality is different. E.g., S.G. Borello & Sons v. Department of Industrial Relations, 48 Cal.3d 341, 349 (1989) (contractual

1  recitals of whether person performing services is an employee or independent
2  contractor); <u>Pistone v. Superior Court</u>, 228 Cal.App.3d 672, 680 (1991)
3  (contractual recitals of the existence or absence of agency).  Indeed, not even
4  the parties' sworn testimony about their intentions is "controlling on the ultimate
5  issue of contract interpretation [about whether someone is an intended third
6  party beneficiary]." <u>Neverkovec v. Fredericks</u>, 74 Cal.App.4th 337, 348-351 fn.9
7  (1999).

8      Here, the practical reality is that defendant Theragenics' purpose in
9  entering into the Stock Purchase Agreement was to acquire ownership of all of
10 Galt Medical Corp.'s stock and stock derivatives.  Indeed, the Agreement
11 provided that all stock options would cease to exist when the sale was
12 consummated.  (Stock Purchase Agreement, pp. 11-12 (Section 2.02).)

13     Defendant Theragenics either intended to benefit the entire class of
14 owners of Galt stock derivatives by paying them for their stock derivatives or it
15 intended, as to at least one or more of that class, to steal their stock derivatives.
16 Such a purpose cannot simply be presumed.  To the contrary, in California there
17 is a rebuttal presumption that "The law has been obeyed."  California Civil Code
18 §3548.

19     There is abundant evidence, even within the four corners of the Stock
20 Purchase Agreement, that Mr. Duvall was part of a class of intended third party
21 beneficiaries.  Further, the very purpose of the Stock Purchase Agreement
22 demonstrates that Mr. Duvall was part of a class of intended third party
23 beneficiaries.  Finally, this is a factual issue which cannot in any event be
24 decided on the pleadings without an opportunity for discovery and for
25 presentation of evidence about the circumstances surrounding the making of the
26 Stock Purchase Agreement.   Defendant's motion to dismiss the third and fourth
27 causes of action should be denied.
28 ///

3.  **Defendants' Motion to Dismiss the Fifth and Sixth Causes of Action for Violation of the California Labor Code Should be Denied Because the Labor Code Requires Employers to Timely Pay Employees All Compensation Due**

The fifth and sixth causes of action request relief for defendants' failure to pay plaintiff Tim Duvall part of the compensation due him as an employee, his stock options, in violation of duties imposed by statute or by California public policy.

Failure to pay an employee compensation due him or her is a violation of fundamental California public policy. Gould v. Maryland Sound Industries, Inc., 31 Cal.App.4th 1137, 1148 (1995); Phillips v. Gemini Moving Specialists, 63 Cal.App.4th 563, 547 (1998).

Defendants moved to dismiss the sixth cause of action, and part of the fifth cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) dismissal is proper only if the facts alleged do not support any valid legal claim, whether or not it is a legal theory intended by or relied upon by the plaintiff. Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial §9:227; Haddock v. Board of Dental Examiners of California, 777 F.2d 462, 464 (9th Cir. 1985); Minger v. Green, 239 F.3d 793, 799-801 (6th Cir. 2001).

As to each of these two causes of action, defendants' demurrer can therefore be granted only if the facts pleaded in the cause of action do not support any legal theory at all, including legal theories not mentioned in the complaint.

The fifth and sixth causes of action refer to four specific sections of the California Labor Code: Sections 206, 216, 227 and 2927. Defendants' motion to dismiss must be denied if the facts pleaded in these causes of action support claims under any of those Labor Code Sections, under Labor Code §218.5, or under any other statute or fundamental California public policy. Various legal theories are discussed in separate sections below.

a. Labor Code Section 2927

California Labor Code §2927 provides, in full, "An employee who is not employed for a specified term and who quits the service of his employer is entitled to compensation for services rendered up to the time of such quitting." The fifth and sixth causes of action each allege that defendants failed to pay Mr. Duvall some of the compensation due him for services rendered up to the time he quit; namely, his stock options.

Defendants did not move to dismiss any claims brought pursuant to Section 2927. Defendants do not deny that Mr. Duvall's stock options were "compensation for services rendered." Section 2927 supports the fifth cause of action, in which it is explicitly mentioned, so defendants' motion to dismiss the fifth cause of action should be denied on that ground. Section 2927 also supports plaintiff's sixth cause of action, so defendants' motion to dismiss that cause of action should also be denied on that ground.

A Rule 12(b)(6) dismissal is proper only if the facts alleged do not support any valid legal claim, whether or not it is a legal theory intended by or relied upon by the plaintiff. Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial §9:227; Haddock v. Board of Dental Examiners of California, 777 F.2d 462, 464 (9th Cir. 1985); Minger v. Green, 239 F.3d 793, 799-801 (6th Cir. 2001).

If the Court finds that the facts alleged in the fifth or sixth causes of action support a valid claim under Section 2927 (or any other provision of law), there is then no occasion to rule on whether or not other sections of the California Labor Code also support those causes of action.

///
///
///
///

b.   <u>Labor Code Section 227</u>

California Labor Code §227 requires employers to make all agreed payments to any "health or welfare fund, pension fund or vacation plan, or other such plan for the benefit of the employees..." Defendants violated Section 227 by failing to make payments to Mr. Duvall for his stock options, which were a plan for the benefit of an employee, Mr. Duvall.

Defendants argue that Section 227 does not apply for two reasons. First, defendants argue that Mr. Duvall's stock options were not a plan for the benefit of employees. Second, defendants argue that Section 227 does not apply because Mr. Duvall's stock options were to be paid to him, rather than to a plan.

Mr. Duvall's stock options were a plan for the benefit of employees. Defendants' own Stock Purchase Agreement admits it. At page 2 of the Agreement, the definition of "Benefit Plan" reads in pertinent part as follows:

> "*Benefit Plan*" means any written and any unwritten... stock option, stock grant, stock ownership, stock appreciation rights... or other employee benefit plan, practice, policy, agreement or arrangement of any kind, whether written or oral, including any 'employee benefit plan' within the meaning of Section 3(3) of ERISA."

Further, Mr. Duvall's written employment contract between Mr. Duvall also admits that Mr. Duvall's stock options were part of at least an informal plan, by stating "A formal option plan is in the making and will be forwarded to you upon completion." (Complaint ¶7.)

Despite their own signed admissions that stock options are a benefit plan for employees, defendants argue that Paragraphs 8 and 31 of the Complaint admit there was no plan. That is simply untrue.

Paragraph 8 of the Complaint alleges in relevant part "neither of these defendants not anyone else ever forwarded a formal stock option plan to Mr. Duvall." That paragraph, of course, is silent about whether a formal stock option plan exists and is equally silent about whether an informal stock option plan was ever forwarded to Mr. Duvall.

1	Paragraph 31 of the Complaint alleges in relevant part that defendants
2	"fail[ed] to document Mr. Duvall's stock option in a formal option plan." That
3	paragraph, or course, is silent about whether defendants documented the stock
4	options of other employees in a formal stock option plan and is equally silent
5	about whether defendants documented Mr. Duvall's stock option in an informal
6	option plan.

7	Defendants argue in their memorandum (at page 7, fn. 14) that stock
8	options are "typically not considered welfare or pension plans" pursuant to
9	ERISA. Whether or not that is true is irrelevant. California Labor Code §227
10	applied not only to any "health or welfare fund" and to any "pension fund," but
11	also to any "other such plan for the benefit of the employees."

12	Further, the provisions of the Stock Purchase Agreement relating to
13	compensating employees for their stock options and then extinguishing them are
14	also a "plan for the benefit of the employees" within the meaning of Section 227.

15	Defendants' second and final argument regarding California Labor Code
16	§227 is that it does not apply to Mr. Duvall's stock options because no payments
17	were to be made to a plan. There is certainly nothing on the face of the
18	complaint saying that no stock option payments were to be made to a plan.
19	Further, the Stock Purchase Agreement specifically contemplates a plan for stock
20	option payments.
21	///
22	///
23	///
24	///
25	///
26	///
27	///
28	///

1       c.      Labor Code Sections 206 and 216

2       Defendants argue that California Labor Code Sections 206 and 216 do not support the fifth or sixth causes of action on one ground only: that stock options are allegedly not "wages" for purposes of Sections 206 or 216, as defined by California Labor Code §200.

Defendants' argument is mistaken. Here is how a recent California Court of Appeal decision described the scope of "wages" as defined by Section 200:

> "Section 200 provides that wages include: 'all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.' [3] The term "wages" has been held to include money as well as other value given, including room, board and clothes. (Schumann v. California Cotton Credit Corp. (1930) 105 Cal.App. 136, 140.) ' "[T]he term 'wages' should be deemed to include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation. [Citations.]"' (Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1972) 24 Cal.App.3d 35, 44.)" Department of Industrial Relations v. UI Video Stores, Inc., 55 Cal.App.4th 1084, 1091 (1997).

Defendants argue that stock options are not "amounts" because their value cannot be precisely determined when they are issued. Defendants' argument is inconsistent with Schumann v. California Cotton Credit Corp., 105 Cal.App. 136, 140 (1930), which held that "room," "board" and "clothes" were wages within the meaning of Section 200.

Another published California appellate case also holding that the definition of "wages" is very broad was Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 24 Cal.App.3d 35, 43-44 (1972). Here is the reasoning in Ware:

> "No cases have construed section 229 of the Labor Code, but the intent appears quite clear. While the strong public policy of the state favors arbitration (Federico v. Frick, supra, 3 Cal.App.3d 872, 875), the intent of the statute is to provide in the first instance a judicial forum where there exists a dispute as to wages. Since the intent is clear, the only determination [24 Cal.App.3d 44] which must be made is whether the profit sharing benefits constitute wages within Labor Code section 200, supra. [7] "[P]ursuant to the present day concept of employer-employee relations, the term 'wages' should be

deemed to include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation. [Citations.]" (Wise v. Southern Pac. Co. (1970) 1 Cal.3d 600, 607.) A bonus, offered as an incentive to attract employees, has been held to be wages. (Hunter v. Ryan (1930) 109 Cal.App. 736, 738.) Payments to a health and welfare fund by an employer (People v. Alves (1957) 155 Cal.App.2d Supp. 870, 872), payment of insurance premiums by an employer (Foremost Dairies v. Industrial Acc. Com. (1965) 237 Cal.App.2d 560, 580), payments to an unemployment insurance fund (People v. Dennis (1967) 253 Cal.App.2d Supp. 1075, 1077, and pension plan benefits (Hunter v. Sparling (1948) 87 Cal.App.2d 711, 725) are wages within the meaning of the statute. In its legal sense, the word "wage" has been given a broad, general definition so as to include compensation for services rendered without regard to the manner in which such compensation is computed. (Estate of Hollingsworth (1940) 37 Cal.App.2d 432, 436.)"

In the face of this clear and longstanding black letter law, defendants rely upon a single case, International Business Machines Corp. v. Bajorek, 191 F.3d 1033, 1039 (9th Cir. 1999).

Bajorek does not apply to the present case for three reasons. First, Bajorek's holding does not apply to this case because it was specific to "the purposes" of Labor Code §221, as opposed to Sections 206 or 216. Second, Bajorek does not apply to this case because it did not accurately predict what the California Supreme Court or Appellate Courts would decide and has been questioned by a California appellate court. Third, Bajorek does not apply to this case because here Mr. Duvall has alleged that his stock options were compensatory options which he earned in lieu of salary, making them "wages" according to the 2005 Court of Appeal decision in Woods v. Fox Broadcasting Sub. Inc. , 129 Cal.App.4th 344, 357 (2005).

Bajorek has nothing to do with Labor Code §§ 206 or 216. Rather, Bajorek interprets an entirely different provision, Section 221. Bajorek's determination that stock options are not wages for purposes of Section 221 was "in light of the purposes" of Section 221. "The purpose of avoiding secret kickbacks enabling an employer to avoid minimum wage laws or collective bargaining agreement obligations, and of protecting employees' reliance

- 11 -
Plaintiff's Memorandum in Opposition to Motion to Dismiss        Case No. C07-03714 JCS

1 interests in their expected wages, do not apply to stock options." <u>Bajorek</u> at
2 239.

3     In contrast, the purpose of Labor Code Sections 206 and 216 is to make
4 sure employees are paid the compensation they are due.  For these purposes,
5 "[P]ursuant to the present day concept of employer-employee relations, the term
6 'wages' should be deemed to include not only the periodic monetary earnings of
7 the employee but also the other benefits to which he is entitled as a part of his
8 compensation. [Citations omitted.]" <u>Wise v. Southern Pac. Co.</u>, 1 Cal.3d 600,
9 607 (1970).

10     The second reason why <u>Bajorek</u> does not apply to this case is because it
11 inaccurately predicted how the California appellate courts would rule.  <u>Woods v.
12 Fox Broadcasting Sub. Inc.</u>, 129 Cal.App.4th 344, 357 (2005) questioned
13 whether <u>Bajorek</u> was correctly decided.  Further, <u>Bajorek</u> is inconsistent with the
14 multitude of published California cases cited above, which in fairness to the
15 panel that decided <u>Bajorek</u> were likely never cited to that Court, as the Court did
16 not mention them in its opinion.

17     The third reason why <u>Bajorek</u> does not apply to this case is because here
18 Mr. Duvall has alleged that his stock options were compensatory options which
19 he had earned.  (Complaint ¶¶84 and 87.)   A case decided just two years ago
20 by the California Court of Appeals holds that under such circumstances stock
21 options are wage within the meaning of the California Labor Code.  Here's the
22 reasoning and holding of that case:

23-28
> "We can reach a ground for demurrer that was not raised below if it presents a pure question of law. (<u>Home Ins. Co. v. Zurich Ins. Co.</u> (2002) 96 Cal.App.4th 17, 22.) Appellants alleged that their stock options were "compensatory" options which they had "earned." [9] In California, "wages" are broadly defined to include more than just salary. (Lab. Code, § 200, subd. (a); <u>Department of Industrial Relations v. UI Video Stores, Inc.</u> (1997) 55 Cal.App.4th 1084, 1091 [wages includes not just salary but also other benefits that are part of an employee's compensation].) Although the Ninth Circuit has held that stock options are not wages under California law (<u>International Business Machines Corp. v. Bajorek</u> (9th Cir. 1999)

> 191 F.3d 1033, 1039), that case turned on the unpredictability of the stock price at any given time and the inability to determine their relationship to the defendant's labor. Without deciding whether the Ninth Circuit was correct, appellants' allegations that they "earned" their "compensatory" options raises factual issues concerning the reasons why they were awarded and the methods by which they were determined. As a result, it is not appropriate for us to reach that issue now." Woods v. Fox Broadcasting Sub., Inc. (2005)129 Cal.App.4th 344, 357.

The holding of Woods, a two year old California Court of Appeals decision, is controlling here, requiring rejection of defendants' argument.

        d.    California Labor Code Section 218.5

As discussed above, defendants' motion to dismiss must be denied if the facts alleged support any valid legal claim at all, whether or not it is a legal theory intended by or relied upon by the plaintiff. Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial §9:227; Haddock v. Board of Dental Examiners of California, 777 F.2d 462, 464 (9th Cir. 1985); Minger v. Green, 239 F.3d 793, 799-801 (6th Cir. 2001).

The facts alleged in the fifth and sixth causes of action support a valid legal claim under California Labor Code §218.5, which provides in relevant part:

> "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorneys' fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon initiation of the action."

Plaintiff requested attorneys' fees pursuant to Section 218.5 upon the initiation of this action. (Complaint, page 23, lines 19-20.)

The facts alleged in the fifth and sixth causes of action support valid legal claims under California Labor Code §§206, 216, 218.5, 227, and 2927 and the public policy of the State of California. As long as the Court finds that each of these causes of action supports a valid legal claim under at least one legal theory, defendants' motion to dismiss these causes of action must be denied.

///

1  4.   **Defendants' Motion to Dismiss the Promissory Fraud Claim Should Be Denied Because The Claim Was Pleaded With Abundant Specificity**

Plaintiff Tim Duvall's cause of action for promissory fraud was pleaded with even more factual detail than required. (Complaint ¶¶1, 7-19, and 83-98.) Despite this, defendants moved to dismiss this cause of action for purported failure to allege 'the circumstances indicating falseness' or 'the manner in which [the] representations [or omissions] were false and misleading'" sufficiently to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. (Defendants' Memorandum at 9:15-16.)

In promissory fraud cases, the manner in which representations are false and misleading is that the defendant did not intend to perform the promise when it was made. California Civil Code §1710(4); Tenzer v. Superscope, Inc. (1985) 39 Cal.3d 18, 30. This element is proven by evidence, either direct or circumstantial, of the defendant's state of mind.

Rule 9(b) explicitly allows state of mind to be pleaded "generally," without the specificity required for the pleading of other elements. Here is the complete text of Federal Rule of Civil Procedure 9(b):

> "Fraud, Mistake, Condition of Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

Even the case primarily relied upon by defendant in support of its motion to dismiss the promissory fraud claim confirms this:

> "At argument, counsel for plaintiff hypothesized that a plaintiff might allege he bought a house from defendant, that defendant assured him that it was in perfect shape, and that in fact the house turned out to be building on landfill, or in a highly irradiated area; plaintiff could simply set forth these facts (presumably along with time and place), allege scienter in conclusory fashion, and be in compliance with Rule 9(b). We agree that such a pleading would satisfy the rule." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994).

Because defendants' lack of intent to perform their promise when they made it is an intent and a condition of mind, this element of the promissory fraud claim was only required to be averred generally. The allegation in Paragraph 85 of the complaint, that defendants "did not intend to perform this promise when they made it" was sufficient in and of itself to allege "the circumstances indicating falseness" and "the manner in which [the] representations [or omissions] were false and misleading."

However, plaintiff pleaded much more. (Complaint ¶¶1, 7-19, 31, 84, and 86-89.)

Even if plaintiff were required to plead sufficient evidentiary facts to prove defendants' lack of intent to perform, plaintiff has done so. The California Supreme Court succinctly described how lack of intent to perform can be proven by circumstantial evidence to establish a claim for promissory fraud:

> "To be sure, fraudulent intent must often be established by circumstantial evidence. Prosser, for example, cites cases in which fraudulent intent has been inferred from such circumstances as defendant's insolvency, his hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." Tenzer v. Superscope, Inc., 39 Cal.3d 18, 30 (1985).

There is abundant circumstantial evidence in this case that defendants did not intend to honor their promise to pay Mr. Duvall stock options at the time they made it. Some of this evidence is alleged in Paragraphs 1, 7-19, 31, 84, and 86-89 of the Complaint.

In Mr. Duvall's written employment contact, defendants represented that "A formal [stock] option plan is in the making and will be forwarded to you upon completion." (Complaint ¶7.) Defendant did not even attempt performance, despite numerous reminders, and never gave Mr. Duvall a formal written stock option plan. (Complaint ¶¶8, 9 & 11.) Now defendants falsely claim that Mr. Duvall's "right to exercise [his stock options] terminated and the options expired." (Defendants' Memorandum at 9:23-24; Complaint ¶24.)

As defendants themselves point out in their opening memorandum (at pp. 8-9), the point of the Rule 9(b)'s heightened pleading standard is to give notice of their particular misconduct so they can defend against the charge. Plaintiff's original complaint has provided more than sufficient detail for defendants to defend against this cause of action. Defendants' motion to dismiss plaintiff's promissory fraud cause of action should be denied.

5. **Defendant Theragenics' Motion to Dismiss the Conversion Claim Against It Should Be Denied Because Theragenics' Possession of Plaintiff's Stock Options Was Properly Pleaded and Must be Accepted as True on a Motion to Dismiss**

Defendant Theragenics' motion to dismiss the conversion claim against it is puzzling. Defendant Theragenics' sole argument is as follows:

> "Plaintiff has not and cannot state a claim for conversion, however, because, as evidenced by the Agreement, Theragenics purchased and could only be in possession of, those Company Stock Derivatives identified in Schedule 1. Because Theragenics could not obtain or otherwise convert Plaintiff's stock options pursuant to the express terms of the Agreement, Plaintiff has not stated an actionable claim for conversion as to Theragenics." (Defendants' Memorandum at 6:5-10.)

What is puzzling about defendants' argument is that the very gist of Mr. Duvall's conversation claim against defendant Theragenics is that Theragenics took Mr. Duvall's stock options without paying him for them. This is perfectly consistent with Theragenics not listing Mr. Duvall in a written agreement as someone who it would pay for stock options.

Defendant notes in footnote 11 (page 6) of its memorandum that defendant Theragenics was not listed in the text of the eighth cause of action for conversion. That was a ministerial oversight. The phrase "Theragenics Corporation," should be added to the text of the eighth cause of action just before "Galt Medical Corp." each time it appears. Plaintiff respectfully requests leave to amend the complaint to correct that oversight.

1    Defendant Theragenics now holds itself out as the owner of all of 100% of
2 the stock and stock derivatives of Galt Medical Corp., including the stock options
3 actually owned by plaintiff Tim Duvall.  See Section 2.02 of Stock Purchase
4 Agreement:

> "all Company Stock Derivatives shall cease to be outstanding, shall be cancelled, retired, and shall cease to exist, and each holder of Company Stock Derivatives shall cease to have rights with respect to such Company Stock Derivatives..." [Emphasis added.] (Stock Purchase Agreement, pp. 11-12 (Section 2.02); cf. Section 2.09)

8 Defendant Theragenics intentionally took possession of Mr. Duvall's stock options
9 and prevented him from having access to them for a significant period of time.
10 Given that Mr. Duvall owned these stock options, these facts are sufficient to
11 establish a claim for conversion.

12 6.    Conclusion

13    For the reasons discussed in this memorandum, and for such further
14 reasons as may be discussed at any oral argument that may be had, plaintiff
15 respectfully requests that the motion to dismiss be denied in its entirely or in
16 such part as may be proper.  Plaintiff respectfully requests leave to amend the
17 eight cause of action with the language specified above.  Further, plaintiff
18 respectfully requests leave to amend as to any cause of action or claim as to
19 which the Court grants defendants' motion to dismiss.

Dated:  September 14, 2007           LAW OFFICES OF PHIL HOROWITZ


                                     by _____
                                        Phil Horowitz
                                        Attorneys for Plaintiff
                                        Tim Duvall