SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
D. RONALD RYLAND, Cal. Bar No. 49749
CRAIG A. PINEDO, CAL. Bar No. 191337
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415-434-9100
Facsimile:    415-434-3947

HALLETT & PERRIN, P.C.
EDWARD P. PERRIN, JR. (*Pro Hac Vice*)
Texas State Bar No. 15796700
ADRIENNE I. HIRST (*Pro Hac Vice*)
Texas State Bar No. 24047561
2001 Bryan Street, Suite 3900
Dallas, Texas 75201
Telephone:    (214) 953-0053
Facsimile:    (214) 922-4141

Attorneys for Defendants Galt Medical Corp.,
Theragenics Corporation, and James R. Eddings

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM DUVALL, | Case No. 07-3714 |
| Plaintiff, | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |
| v. | |
| GALT MEDICAL CORP., THERAGENICS CORPORATION, JIM EDDINGS, and DOES 1-99, inclusive, | |
| Defendants. | Date:   November 30, 2007 (by Court order)<br>Time:   9:30 a.m.<br>Crtrm.: A, 15th Floor |

Defendants Galt Medical Corp. ("Galt"), Theragenics Corporation ("Theragenics"), and Jim Eddings ("Eddings") (collectively "Defendants") respectfully submit this Reply to Plaintiff's Response to Defendants' Motion to Dismiss Certain Claims in Plaintiff's Original Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") to address certain points raised by Plaintiff's Response.

**A.  Plaintiff's Response Confirms Plaintiff Was Not an Intended Third-Party Beneficiary of the Agreement, and Thus Plaintiff Fails to State Actionable Claims Against Theragenics for Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing.**

Despite Plaintiff's contention, Plaintiff was not an intended third-party beneficiary of the Stock Purchase Agreement between Theragenics and Galt shareholders, dated as of August 2, 2006 ("Agreement") and, therefore, he cannot state a claim against Theragenics for breach of contract or breach of the covenant of good faith and fair dealing. Plaintiff admits that the "ultimate issue" when determining whether Plaintiff was an intended third-party beneficiary is one of contractual interpretation.[1] Contractual interpretation is a determination reserved to the Court, and is controlled by the unambiguous, express provisions of the contract.[2] In this case, the clear, unambiguous Agreement provides, in Section 8.04, which is titled "<u>Assignment; Binding Effect; No Third Party Beneficiary</u>," that there are no third-party beneficiaries of the Agreement. Plaintiff has not claimed and cannot claim that Section 8.04 is ambiguous and, as such, the express provision controls, and ultimately ends, the inquiry as to whether Plaintiff was an intended third-party beneficiary of the Agreement.[3] This case is materially dissimilar to those cited by Plaintiff because the cases cited by Plaintiff do not involve express contractual provisions disclaiming the

---

[1] *See* Plaintiff's Response p. 5.

[2] <u>Burkett v. Liberty Mut. Fire. Ins. Co.</u>, 629 S.E.2d 558, 559 (Ga. 2006) ("Under Georgia law...where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent."); see also <u>Hartley-Selvey v. Hartley</u>, 410 S.E.2d 118, 119-20 (Ga. 1991) ("[W]here the terms of a contract are clear and unambiguous, the court must look to those terms alone to determine the intent of the parties."). Pursuant to Section 8.05 of the Agreement, Georgia law controls the interpretation of the Agreement.

[3] <u>Id.</u>

existence of third-party beneficiaries. To that end, Plaintiff's cases are not on point or controlling on the Court's determination as to whether Plaintiff was a third-party beneficiary of the Agreement.

Section 8.04 is hardly a "rote contractual recital[]"[4] that can be disregarded, as it clearly reflects the intent of the parties that the Agreement <u>not</u> benefit any third-parties. Additionally, Plaintiff's claim that Defendants take "one sentence out of context"[5] when making their argument that Plaintiff is not an intended third-party beneficiary of the Agreement is difficult to understand. Despite Plaintiff's implications that the denial of third-party beneficiaries is found in some obscure or random "sentence" in the Agreement, it is actually found in a Section prominently titled "<u>No Third Party Beneficiary</u>."[6] The plain, clear language of that section unambiguously expresses and confirms the parties' intent that there are to be no third-party beneficiaries of the Agreement. Plaintiff has not cited, and cannot cite to the Court any authority to the contrary.

In light of the express contractual provision, the Court need not evaluate the purpose of the Agreement. However, even if it does so, Plaintiff would not be able to state a claim against Theragenics under the Agreement. Specifically, the purpose of the Agreement was for Theragenics to purchase the stocks and stock derivatives of Galt listed in Schedule 1 of the Agreement, which was represented by Sellers to be 100% of the stock and stock derivatives of Galt.[7] If Plaintiff had stock options that existed at the time, and that should have been disclosed in Galt's representation, a claim may lie against Galt, but not Theragenics, for such misrepresentation and any resulting failure to include valid options in Schedule 1.

---

[4] Plaintiff's Response p. 4.

[5] Plaintiff's Response p. 4.

[6] *See* Agreement Section 8.04, a true and correct copy of which is attached as Exhibit "A" to Defendants' Motion.

[7] The Sellers represented that "<u>Schedule 1</u> sets forth each holder of any equity interest in the Company, including Company Stock Derivatives and such holder's corresponding ownership amount or right to receive such ownership amount or other payment and any material terms or conditions relating thereto." Section 3.17 (emphasis in original).

Finally, even if Plaintiff were an intended third-party beneficiary, which he was not,[8] he has not stated and cannot state a claim for breach of contract or breach of the covenant of good faith and fair dealing as to Theragencis. Specifically, Theragenics fully performed its obligation, under the Agreement, to purchase only those stocks and stock derivatives listed in Schedule 1. Theragenics agreed to:

> purchase and accept from Sellers,...(i) the shares of common stock of the Company, $0.10 par value (the "*Company Shares*") **set forth opposite the name of each Seller on <u>Schedule 1</u>** hereto, which Company Shares represent one hundred percent (100%) of the issued and outstanding capital stock of the Company, and (ii) Company Stock Derivatives **set forth opposite the name of each Seller on <u>Schedule 1</u>** hereto, which Company Stock Derviatives represent one hundred percent (100%) of the aggregate outstanding Company Stock Derivatives.[9]

In full compliance with the Agreement, Theragenics purchased all of the stocks and stock derivatives listed in Schedule 1. As such, Theragenics never agreed to purchase Plaintiff's stock options (assuming the same existed at the time) because no such options were listed on Schedule 1, and therefore Theragenics did not breach the Agreement.

For these reasons, Plaintiff has failed to state any actionable claim against Theragenics for breach of contract or breach of the covenant of good faith and fair dealing.

**B.    Plaintiff Has Not Stated, and Cannot State a Claim of Conversion as to Theragenics Because Theragenics Never Obtained Any Sock Options Claimed By Plaintiff.**

Plaintiff has not alleged and cannot allege that Theragenics intended to take and did take anything other than the Galt stocks or stock derivatives specifically and separately listed in Schedule 1. Although the Sellers represented that those stocks and stock derivatives on Schedule 1 represented 100% of the outstanding stocks and stock derivatives of Galt, Theragenics still

---

[8] Paradoxically, *if* Plaintiff is a third-party beneficiary of the Agreement, then he is bound by the arbitration clause in Section 8.09 of the Agreement. Thus, the fact that Plaintiff brought his claim under the Agreement in this Court is inconsistent with, and contradicted by his contention that the provisions of the Agreement apply to him. In the unlikely event that Plaintiff's claims under the Agreement are not dismissed, Defendants expressly reserve the right to compel arbitration, as provided by the Agreement.

[9] Agreement p. 1 (bold added, underline in original).

-3-

1 purchased only those stocks and stock derivatives on Schedule 1.  If those stocks and stock
2 derivatives did not, in fact, equal 100% of the outstanding stock and stock derivatives, it does not
3 change the fact that Theragenics purchased only those items on Schedule 1.  Theragenics was not
4 aware of the existence of Plaintiff's options, assuming the same existed, and Plaintiff has not
5 claimed otherwise.  As such, Plaintiff cannot claim that Theragenics intentionally and unlawfully
6 took ownership or dominion over Plaintiff's options.

**C.    Plaintiff's Claims Under California Labor Code Sections 206, 216, 218.5, and 227 Must be Dismissed.**

At best, Plaintiff misconstrues the applicable law when he states that "Defendants' motion to dismiss must be denied if the facts pleaded in these causes of action [Fifth and Sixth Causes of Action] support claims under any of those Labor Code Sections [Sections 206, 216, 227 or 2927], under Labor Code §218.5, or under any other statute or fundamental California public policy."[10] In reality, if the Court finds that Plaintiff has failed to state a claim under Sections 206, 216, and/or 227, then Defendants' Motion must be granted as to those claims.

What Plaintiff has essentially done is group what would otherwise be several separate causes of action together under two headings ("Fifth Cause of Action" and "Sixth Cause of Action").  Such arbitrary grouping should not be determinative, however.  The Court may, and should, evaluate each of the distinct causes of action separately.  As explained more fully in Defendants' Motion, Plaintiff *cannot* state a cause of action under Sections 206, 216 or 227.[11] These causes of action should be dismissed, leaving only Plaintiff's claim under Section 2927 remaining under the heading "Fifth Cause of Action."  Plaintiff cites no authority for the proposition that the Court is unable to dismiss invalid causes of action simply because they are listed under a heading with a valid cause of action.

---

[10] Plaintiff's Response p. 6.

[11] Because Plaintiff fails to state a claim under Sections 206 and 216, and has not alleged a claim for "nonpayment of…health and welfare or pension fund *contributions*" there is no basis for his claim under Section 218.5 and that claim must be dismissed as well.

1. Plaintiff's Claims Under Sections 206 and 216 Must Be Dismissed Because, Under Uncontroverted Ninth Circuit Precedent, Stock Options Are Not "Wages" Under the Labor Code.

In order to state a claim under Sections 206 and 216, Plaintiff must be able to show that stock options are "wages" within the meaning of Section 200 of the California Labor Code ("Code"). As set forth in Defendants' Motion, in <u>International Business Machines Corporation v. Bajorek</u>,[12] the Ninth Circuit held stock options are <u>not</u> "wages" under Section 200. This authority is directly on point and is binding on this Court, and uncontroverted by any authority put forth by Plaintiff.

The case that Plaintiff does cite, <u>Woods v. Fox Broadcasting Sub. Inc.</u>,[13] is not controlling authority for this Court and, further, contrary to Plaintiff's assertion, does not "hold" that stock options are "wages" under the Code. In fact, the state Court of Appeals, in *dicta*, specifically declined to reach that issue in light of the pleadings that were before that court, but are not before this Court or the parties in this case.[14]

Plaintiff states that "Defendants argue that stock options are not 'amounts' because their value cannot be precisely determined when they are issued."[15] Although Defendants adopt this argument, they cannot take credit for it. It was, in fact, the Ninth Circuit in <u>Bajorek</u> that stated:

> Stock options are not 'amounts. They are not money at all. They are contractual rights to buy shares of stock. . . . The amount of money for which the shares can be sold on the market varies unpredictably from time to time, so it is not 'fixed or ascertainable' by any method of calculation when the agreements are made or exercised. . . . Thus, unlike wages, the value that [the plaintiff] obtained from them depended largely on the vagaries of the stock market valuation on those dates.[16]

---

[12] 191 F.3d 1033 (9th Cir. 1999).

[13] 129 Cal. App. 4th 344, 357 (2005).

[14] *See* <u>Woods</u>, 129 Cal. App. 4th at p. 357 ("it is not appropriate for us to reach that issue now").

[15] Plaintiff's Response p. 10.

[16] <u>International Business Machines Corp. v. Bajorek</u>, 191 F.3d 1033, 1039 (9th Cir. 1999).

1    Plaintiff attempts to distinguish Bajorek on the grounds that it involved an alleged
2 violation of California Labor Code Section 221, while the instant case involves alleged violations
3 of Sections 206 and 216. This argument is unpersuasive, however, because the court in Bajorek
4 specifically interpreted "wages," as defined in Section 200,[17] which explicitly applies to the entire
5 article of the Code, including Sections 206 and 216.[18] If "wages" does not have the same meaning
6 throughout the article, regardless of in which Section the term appears, then the definition in
7 Section 200 is meaningless. Thus, the Ninth Circuit's holding that "wages" under Section 200
8 does not include "stock options" is controlling in this case.

9    Because Sections 206 and 216 explicitly apply only to controversies over "wages," and
10 Plaintiff's only claim is based on Defendants' alleged failure to pay him for his stock options,
11 Plaintiff must show that stock options are "wages" under the Code in order to state a viable claim
12 under Section 206 or 216. Plaintiff has not made, and cannot make such a showing and, as such,
13 his claims under Section 206 and 216 must be dismissed.

14    2.    Plaintiff's Claim Under Section 227 Fails Because Plaintiff Fails to Satisfy His
15         Burden to Allege a Plan Exists, and that any Payment to Such a Plan is Required,
16         and Plaintiff Seeks Payment to Himself, Not a Plan.

17    Section 227 applies to actions for failure to make a payment to a "health or welfare fund,
18 pension fund or vacation plan, or other such plan for the benefit of the employees."[19] Plaintiff
19 cannot state a claim under Section 227 because there was no such plan in this case. Apparently
20 misunderstanding the burden he carries to state a claim, Plaintiff admits that his Complaint is
21 "silent about whether a formal stock option plan exists and is equally silent about whether an
22 informal stock option plan was ever forwarded to Mr. Duvall."[20] Plaintiff goes on to state that the

---

[17] See Bajorek, 191 F.3d at 1039 and n.17.

[18] "**As used in this article**: (a) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." Cal. Labor Code §200 (emphasis added).

[19] Cal. Labor Code §227.

[20] Plaintiff's Response p. 8.

1  Complaint is similarly "silent about whether defendants documented the stock options of other
2  employees in a formal stock option plan and is equally silent about whether defendants
3  documented Mr. Duvall's stock option in an informal option plan."[21]

4  Plaintiff's Complaint simply does not make any allegation, factual or conclusory, that any
5  stock option plan, of the nature anticipated by Section 227, existed.[22] Instead Plaintiff's
6  Complaint explicitly states that although he was advised that a "formal option plan is in the
7  making and will be forwarded to you upon completion,"[23] a formal plan was never forwarded to
8  him.[24] Thus, Plaintiff's Complaint is clear that his claimed right to any stock options, and the
9  terms thereof, were created by, and Plaintiff is suing "pursuant to," his "written employment
10 contract," not any stock option plan.[25]

11 Even if Plaintiff had alleged or could allege the existence of a plan under Section 227, he
12 would still fail to state a claim under Section 227 because, unlike a pension or retirement plan, a
13 stock option separately granted to an individual does not require an employer to make payments to
14 the stock option plan or otherwise. Confirming this, Plaintiff's Complaint is not based on
15 Defendants' failure to make payments *to* the plan, but rather their alleged failure to make
16 payments *to* Plaintiff. Plaintiff's own Response clearly illustrates this distinction:

> California Labor Code §227 requires employers to make all agreed payments **to any 'health or welfare fund, pension fund or vacation plan**, or other such plan for the benefit of the employees. . .' Defendants

---

[21] Plaintiff's Response p. 9.

[22] In his Response, Plaintiff cites a definition from the Agreement for the proposition that his stock options were a plan for the benefit of employees; however, that definition is irrelevant to the inquiry under Section 227. The portion of the Agreement quoted by Plaintiff was simply a defined term for purposes of clarity in certain representations and warranties in the Agreement. Plaintiff has not alleged any facts that indicate that a "Benefit Plan," as defined by the Agreement, is the same as a "health or welfare fund, pension fund or vacation plan, or other such plan for the benefit of the employees" under Section 227. The definition assigned by the Agreement is surely irrelevant to the meaning under Section 227.

[23] Plaintiff's Original Complaint ¶7.

[24] Plaintiff's Original Complaint ¶8.

[25] Plaintiff's Complaint ¶23.

1
2
        violated Section 227 by failing to make payments **to Mr. Duvall** for his stock options. . . ."[26]

3    Thus, even if Plaintiff could allege and prove the existence of a "health or welfare fund,
4    pension fund or vacation plan, or other such plan," he has not claimed and cannot claim that
5    Defendants failed to make a payment to that plan. Plaintiff's claim is solely that Defendants failed
6    to make payments to him, not to a plan. As such, Plaintiff has no viable claim under Section 227
7    and those claims should be dismissed.

8        3.    Claims Under Section 218.5 Must Be Dismissed Due to Failure of Other Claims
9            and Failure to Allege Non-Payment of Contribution to Any Fund

10    Plaintiff alleges that he is entitled to attorney's fees under Section 218.5 because he has
11    alleged claims for violation of other sections of the Labor Code. Section 218.5, however, only
12    applies to actions "for the nonpayment of wages, fringe benefits, or health and welfare or pension
13    fund contributions."[27] Duvall has not alleged a claim for nonpayment of "health and welfare or
14    pension fund *contributions*,"[28] and he cannot show that stock options are wages. Consequently,
15    Section 218.5 is inapplicable and Plaintiff's claims under Section 218.5 should be dismissed.

16    **D.**    **Plaintiff's Promissory Fraud Claims Fail to Meet the Heightened Pleading Standard**
17        **of FRCP 9(b) and Must Be Dismissed Because the Claims Are Not Stated with**
18        **Particularity, and Plaintiff Has Made No Allegation He Even Attempted to Exercise**
19        **His Options, or That Defendants Would Not Perform.**

20    As discussed in greater detail in Defendants' Motion, a claim for promissory fraud must
21    meet the heightened pleading requirements applied to all claims of fraud, and because Plaintiff's
22    claims for promissory fraud fail to meet these heightened pleading requirements, they must be
23    dismissed.

---

[26] Plaintiff's Response p. 8.

[27] Cal. Labor Code § 218.5.

[28] Emphasis added.

-8-

Responding further, if necessary, Plaintiff's pleadings must support his theory of fraud that Defendants Galt and Eddings made certain promises without the intent to perform. However, Plaintiff has not alleged and cannot allege that he ever attempted to exercise his options and was denied by Defendants, much less that Defendants would not have performed and/or that they had the intent not to perform when the promise was made. Plaintiff claims that "Defendant[s] did not even attempt performance, despite numerous reminders;"[29] however, Plaintiff does not plead facts giving rise to any obligation to perform in the first instance – specifically, a request or attempt on his part to exercise his options. As defined by the Ninth Circuit, stock options are "contractual rights to buy shares of stock."[30] Plaintiff has never attempted to exercise those rights. Because Plaintiff has not alleged that he attempted to exercise his options and was denied, he has not shown that Defendants promise was false, much less that it was false when made. For these reasons, Plaintiffs promissory fraud claims must be dismissed.

**E.    Conclusion**

Because Plaintiff has failed to state a claim upon which relief can be granted, as discussed above, and, in greater detail, in their Motion, Defendants respectfully request that the following claims be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6): (1) all claims against Theragenics; (2) Plaintiff's claims against Galt under California Labor Code Sections 206, 216, 218.5, and 227; and (3) Plaintiff's claims against Galt and Eddings for promissory fraud.

Dated:  September 21, 2007

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By   /s/ Craig A. Pinedo
CRAIG A. PINEDO

Attorneys for Defendants GALT MEDICAL CORP., THERAGENICS CORPORATION, and JAMES R. EDDINGS

---

[29] Plaintiff's Response p. 15. It should be noted that these purported "reminders" referred to formalizing documentation regarding the stock options or stock option plan, not any request to exercise any options.

[30] Bajorek, 191 F.3d at 1039.

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing document was electronically served on September 21, 2007 on the following counsel of record that are Registered ECF users:

Phil Horowitz
Law Offices of Phil Horowitz
One Market Plaza
Steuart Tower, Suite 2630
San Francisco, CA 94105

*Counsel for Plaintiff*

                                        /s/ Craig A. Pinedo
                                          Craig A. Pinedo