UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM DUVALL,<br><br>    Plaintiff,<br><br>  v.<br><br>GALT MEDICAL CORPORATION, ET AL.,<br><br>    Defendants.<br>_____/ | No. C-07-03714 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFF'S ORIGINAL COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br>[Docket No. 17] |

## I. INTRODUCTION

On June 11, 2007, Plaintiff Tim Duvall filed this action in the Superior Court for the State of California, County of San Francisco, against Defendants Galt Medical Corporation ("Galt"), Theragenics Corporation ("Theragenics") and Jim Eddings ("Eddings"), asserting claims for breach of contract regarding stock options, breach of implied covenant of good faith and fair dealing, violations of California Labor Code Sections 206, 216, 227, and 2927, promissory fraud, and conversion.

On July 17, 2007, Defendants timely removed the case to the United States District Court for the Northern District of California. All parties have consented to the jurisdiction of a United States Magistrate Judge, pursuant to 28 U.S.C. § 636 (c). Defendants bring a Motion to Dismiss Certain Claims in Plaintiff's Original Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). The Court determines that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing on the Motion scheduled for Friday, November 30, 2007, at 9:30 a.m., is **VACATED**. For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Facts[1]

Plaintiff Tim Duvall was employed by Defendant Galt as its Vice President of Marketing from February 2002 to April 2005. Compl. ¶ 1. Galt is a Texas corporation with its principal place of business in Texas and doing business in California at all relevant times. Compl. ¶ 2. Defendant Eddings, a Texas resident, was a President and Chief Executive Officer of Galt at all relevant times. Compl. ¶ 4. Defendant Theragenics is a Delaware corporation with it principal place of business in Georgia and doing business in California at all relevant times. Compl. ¶ 3.

On or about February 9, 2002, Plaintiff and Galt entered into a written employment contract which states in relevant part:

> 3. You will be granted an option to purchase 100,000 shares of common stock of Galt Medical. These options are tied to your employment and will vest in equal increments as follows:
>
> a) 25,000 shares available immediately at an exercise price of $1.00 per share
> b) 25,000 shares at 2/15/03 for $1.50 per share
> c) 25,000 shares at 2/15/04 for $1.75 per share
> d) 25,000 shares at 2/15/05 for $2.00 per share
>
> 4. In the event that the Company were to be sold before the three year period, all shares would vest immediately. A formal option plan is in the making and will be forwarded to you upon completion.

Compl. ¶ 7. Plaintiff asserts that Galt and Eddings assured him that a formal stock option plan was in the making and would be forwarded to him upon completion. Compl. ¶ 8. Plaintiff further asserts that the formal stock option plan was never forwarded to him. *Id*.

In November 2004, Plaintiff reminded Defendants Galt and Eddings that the last of his stock options would vest at the beginning of 2005. Compl. ¶ 9. Plaintiff asserts that Defendants did not dispute Plaintiff's entitlement to the stock options and admitted they had been remiss in addressing Plaintiff's compensation. *Id*.

In December 2004, according to Plaintiff, Galt and Eddings told Plaintiff that, following an audit, a change of Plaintiff's stock options into a stock grant was advisable, and that additional

---

[1] For the purposes of this Motion, the Court accepts Plaintiff's allegations of fact as true. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

2

information would be sent to Plaintiff shortly. Compl. ¶ 10. In January 2005, Defendants informed Plaintiff that they were working on formalizing the documentation of Plaintiff's stock options or, "if advisable and agreeable," documentation to convert the stock options into stock grants." Compl. ¶ 11.

In March 2005, Plaintiff informed Galt and Eddings of his resignation. Compl. ¶ 12. In early April 2005, during Plaintiff's last assignment as an employee of Galt, and before his resignation became effective, Galt and Eddings asked Plaintiff whether he wanted to exercise any of his stock options, which at the time were 100% vested. Compl. ¶ 13. On Plaintiff's inquiry about the issue of potentially converting the stock options into stock grants, Galt and Eddings informed Plaintiff of their decision to choose the stock options alternative. *Id*. Plaintiff responded by indicating that he would not exercise his stock options at the time in the hope that their value would increase. *Id*.

In March or April 2006, about one year after completion of his employment with Galt, Plaintiff and his wife helped Galt at a meeting. Compl. ¶ 14. During the meeting, Plaintiff expressed his willingness to help out with his investment, referring to his stock options in Galt, and Galt and Eddings responded that they were doing their best in nurturing Plaintiff's investment in Galt. *Id*.

In August 2, 2006, Galt and Eddings entered into a Stock Purchase Agreement with Defendant Theragenics. Compl. ¶ 15. The Stock Purchase Agreement[2] provides in relevant part:

> "This STOCK PURCHASE AGREEMENT is made and entered into as of August, 2, 2006 by and among Theragenics Corporation, a Delaware Corporation ("*Purchaser*"), James R. Eddings, a resident of the State of Texas ("*Eddings*") and those shareholders of Galt Medical Corp., a Texas corporation (the "*Company*") listed on Schedule 1 hereto (together with Eddings, "*Shareholders*") and holders of

---

[2] Defendants have filed a Request for Judicial Notice ("RJN") asking the Court to take judicial notice of the Stock Purchase Agreement, dated August 2, 2006 between Theragenics, Eddings, the shareholders of Galt and holders of Galt stock derivatives, including Schedule 1. Rule 201 of the Federal Rules of Evidence permits the Court to take judicial notice of facts that are "capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned." Furthermore, on a motion to dismiss, the Court may consider documents that are expressly referenced in the complaint. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991). Here, Plaintiff refers in the Complaint to the Stock Purchase Agreement between Galt and Theragenics. Therefore, the Court grants Defendants' request and takes judicial notice of the Stock Purchase Agreement.

3

Company Stock Derivatives (as defined in Section 1.01) listed on Schedule 1 hereto (together with Shareholders, "*Sellers*"), and Eddings as Sellers' Representative [ . . . ]." (emphasis in original).

. . .

Pursuant to this agreement, Sellers shall sell, transfer, assign, and deliver to Purchaser, and Purchaser shall purchase and accept from Sellers, for the consideration and on the terms set forth in this Agreement, (i) the shares of common stock of the Company, $0.10 par value (the "*Company Shares*") set forth opposite the name of each Seller on Schedule 1 hereto, which Company Shares represent one hundred percent (100%) of the issued and outstanding capital stock of the Company, and (ii) Company Stock Derivatives set forth opposite the name of each Seller on Schedule 1 hereto which Company Stock Derivatives represent one hundred percent (100%) of the aggregate outstanding Company Stock Derivatives. (emphasis in original).

. . .

"*Benefit Plan*" means any written and unwritten bonus, incentive, compensation [ . . . ] stock purchase, stock option, [ . . . ] agreement or arrangement of any kind, whether written or oral, including any "employee benefit plan" within the meaning of Section 3(3) of ERISA. (emphasis in original).

. . .

"*Company Stock Derivatives*" means all equity interests in the Company other than Company Shares, [ . . . ] including without limitation, phantom stocks, options, warrants, other derivatives and promises to issue any of the foregoing." (emphasis in original).

. . .

[A]ll Company Stock Derivatives shall cease to be outstanding, shall be cancelled, retired and shall cease to exist, and each holder of Company Stock Derivatives shall cease to have any rights with respect to such Company Stock Derivatives, except the right to receive consideration described in Section 2.04(iii)."

. . .

Section 2.04 (iii) each Seller's portion of the Purchase Price allocable to the Company Stock Derivatives held by such Seller shall be paid to such Seller in shares of Purchaser Common Stock, cash or combination thereof, in the manner and amount set forth opposite each Seller's name on Schedule 1 hereto, such amount being determined in the case of any derivative or option to purchase Company Shares by subtracting the aggregate applicable exercise price from the portion of the Purchase Price allocable to the number of Company Shares subject to the option, and in the case of current or former employees, the amount shown of Schedule 1 shall be reduced by any required tax withholding;". RJN at 12, (emphasis in original).

> . . .
>
> Section 8.04 <u>Assignment; Binding Effect; No Third Party Beneficiary</u>. [ . . . ] Notwithstanding anything contained in this Agreement to the contrary, other than <u>Article VII</u>, nothing in this Agreement, expressed or implied, is intended or shall be construed to confer on any person other than the parties hereto or their respective successors and permitted assigns any rights or remedies under or by reason of this Agreement." (emphasis in original)
>
> . . .
>
> Section 8.10 <u>Entire Agreement</u>. This Agreement, together with the Ancillary Agreements and the Confidentiality Agreements constitute the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements and understandings among the parties with respect thereto. No addition or modification of any provision of this Agreement shall be binding upon any party hereto unless made in writing and signed by all parties hereto.

RJN at 1, 2, 3, 11, 12, 26, 52. It is undisputed that Plaintiff's stock options do not appear on Schedule 1 of the Agreement.

### B. The Complaint

In the Complaint, Plaintiff asserts that the Stock Purchase Agreement purported to sell 100% of the stock and 100% of the stock derivatives, including stock options, for $34,000,000. Compl. ¶ 15. According to Plaintiff, this written agreement provided that all owners of Galt stock derivatives, including stock options, would be paid at the closing of the sale the portion of the $34,000,000 purchase price "allocable to the number of Company shares subject to the option," subtracting "the aggregate applicable exercise price" and "reduced by any required tax withholding." Compl. ¶ 16. Plaintiff contends that he did not learn about the sale until after it closed. Compl. ¶ 18. Plaintiff further asserts that he was never paid for his stock options, and that Galt and Eddings purported to transfer Plaintiff's stock options to Theragenics without paying Plaintiff. Compl. ¶ 19.

On the basis of the above factual allegations, Plaintiff asserts eight causes of action: (1) breach of contract regarding stock options by Galt; (2) breach of the covenant of good faith and fair dealing by Galt; (3) breach of contract regarding stock options by Theragenics; (4) breach of the covenant of good faith and fair dealing by Theragenics; (5) violation of California Labor Code, Sections 206, 216, 227, and 2927 by Galt; (6) violation of California Labor Code, Section 216, by

1  Theragenics; (7) promissory fraud by Galt and Eddings; and (8) conversion by Galt, Theragenics,
2  and Eddings.
3     Specifically, Plaintiff claims Theragenics breached the Stock Purchase Agreement and the
4  covenant of good faith and fair dealing, by failing to pay Plaintiff for his stock options the portion of
5  the $34,000.000 purchase price "allocable to the number of Company shares subject to the option,"
6  subtracting "the aggregate applicable exercise price" and "reduced by any required tax withholding."
7  Compl. ¶ 43.
8     Plaintiff further asserts that Galt violated California Labor Code Sections 206, 216, 227 and
9  2927 by failing to pay Plaintiff part of his earned wages, asserting that his stock options for 100,000
10 shares of stock are earned wages. Compl. ¶ 57. Plaintiff also asserts that Theragenics violated
11 California Labor Code Sections 216 (a) and (b) by failing to pay Plaintiff part of his earned wages in
12 the form of stock options for 100,000 shares of stock, and by denying the amount or validity of
13 wages with the intent to annoy, harass, oppress, hinder, delay and/or defraud Plaintiff. Compl. ¶ 73.
14    Plaintiff's claim for promissory fraud against Galt and Eddings is based on the following
15 factual allegations: Galt and Eddings promised Plaintiff in a written employment contract an option
16 to purchase 100,000 shares of common stock of Galt; both Plaintiff and Defendants acknowledged
17 that, but for this promise, compensation would be insufficient; Galt and Eddings did not intend to
18 perform this promise when they made it; Galt and Eddings intended that Plaintiff rely on this
19 promise by working and continuing to work as Vice President of Marketing without seeking
20 additional compensation, other than the stock options; Plaintiff reasonably relied upon the promise;
21 Defendants did not perform their promise; Plaintiff was harmed by the promise without intent to
22 perform made by Galt and Eddings; Plaintiff's reliance on the Defendants' promise was a substantial
23 factor in causing harm to Plaintiff; but for Plaintiff's reliance on the promise, Plaintiff would not
24 have accepted employment with Defendant Galt; despite reasonable care and diligence, Plaintiff did
25 not learn of the falsity of Defendants' promise until after August 2, 2006; as a result, Plaintiff
26 suffered loss of compensation from employment. Compl. ¶¶ 83-94.

6

Plaintiff's conversion claim references Theragenics in the caption, but does not include specific allegations about Theragenics within the allegations that support the claim, found in paragraphs 99-108 of the Complaint.[3]

### C. The Motion

In the Motion, Defendants move to dismiss all claims against Theragenics, claims against Galt under California Labor Code Sections 206, 216, and 227, and claims against Galt and Eddings for promissory fraud. Specifically, Defendants assert that both the contractual claims and the conversion claim against Theragenics fail because Theragenics was not a party to any contract with Plaintiff, and Theragenics only purchased certain specifically identified and scheduled common stock and stock derivatives of Galt, which did not include any stock or stock options claimed by Plaintiff. Further, Defendants argue that stock options are not "wages" for the purposes of the California Labor Code Sections 206 and 216. For the purposes of Section 227, Defendants argue that Plaintiff fails to state a claim as to any defendant because he does not allege that Galt failed to make a payment to a "welfare fund" or "pension fund," admits no plan existed, and seeks recovery only for himself. Finally, Defendants argue that Plaintiff fails to meet the heightened pleading requirements for his promissory fraud claim against Galt and Eddings by failing to identify the circumstances indicating falseness or the manner in which the representations were false and misleading.

In his Opposition, Plaintiff asserts that he was an intended third party beneficiary of the Stock Purchase Agreement because the surrounding circumstances of the Stock Purchase Agreement, including its expressed purpose of purchasing 100% of Galt stock and stock derivatives, supports an inference that Theragenics agreed to pay stock option owners their corresponding portion of the $34,000,000 purchase price, and that Plaintiff was part of the class of the intended third party beneficiaries. Opposition at 5.

Plaintiff further asserts that his fifth and sixth causes of action are based on numerous provisions of the California Labor Code and that these claims should survive so long as they are

---

[3] In the Opposition, Plaintiff acknowledges this omission as a ministerial oversight and asks the Court for leave to amend. The Court grants Plaintiff's request.

7

viable under *any* of these provisions. Thus, he notes, Claim Five should survive at least because it is based, in part, on California Labor Code Section 2927, which is not challenged by Defendants. Plaintiff also argues that Claims Five and Six are viable to the extent they are based on Sections 206, 216 and 227 of the California Labor Code. Opposition at 7. As to Sections 206 and 216, Plaintiff argues that stock options are wages under the California Labor Code and that he states a claim under these sections because the Complaint alleges that his stock options were intended to be part of his compensation package.[4] Opposition at 12. Plaintiff argues that he states valid claims under Section 227 because Defendants failed to make payment for his stock options, which, according to Plaintiff, were a plan for the benefit of an employee as required under Section 227. Opposition at 9. Plaintiff further asserts that the facts alleged in the fifth and sixth causes of action support a valid legal claim under California Labor Code Section 218.5 because Plaintiff requested attorney's fees pursuant to Section 218.5. Opposition at 13.

As to the promissory fraud claim, Plaintiff contends that it was properly pleaded since lack of intent to perform is a condition of mind which can be averred generally for the purposes of Rule (9)(b) of the Federal Rules of Civil Procedure. Plaintiff asserts that the Complaint pleads more than the Rule(9)(b) requirement since it contains abundant specific allegations which, if true, would support a finding that Defendants did not intend to perform their promise. Opposition at 15.

In support to his conversion claim against Theragenics, Plaintiff asserts that: (1) Theragenics now holds itself out as the owner of 100% of the stock and stock derivatives of Galt, including Plaintiff's stock options; and (2) Theragenics intentionally took possession of Plaintiff's stock options, and prevented him from having access to them for a significant period of time. Opposition at 17.

Defendants, in their Reply brief, assert that given the express contractual provision in Section 8.04 entitled "No Third Party Beneficiary," the Court need not evaluate the purpose of the

---

[4] Plaintiff alleges "[t]his promise was important to the transaction in that plaintiff Tim Duvall would not have accepted employment with defendant Galt Medical Corp. but for this promise or some other promise of at least equivalent value. Both Plaintiff Tim Duvall and Defendant Tim Duvall (sic) and, through him Galt Medical Corp. and Does 3 and 4, acknowledged to one another that Mr. Duvall's compensation would be insufficient but for this promise." Compl. ¶ 84.

8

Agreement to determine whether Plaintiff is an intended third party beneficiary because the parties' intent is clear from Section 8.04 that he is not. Defendants note that the third-party beneficiary inquiry is governed by Georgia law because the Agreement contains a choice-of-law provision specifying Georgia law.[5] Defendants further note that if Plaintiff *were* an intended third party beneficiary of the Agreement, he would be required to arbitrate under the arbitration clause contained in the Stock Purchase Agreement. Reply at 1-3.

With respect to the conversion claim, Defendants argue that Theragenics could not have *intentionally* taken over Plaintiff's stock options because there is no allegation that Theragenics had any knowledge that Plaintiff's stock options had been omitted from Schedule 1. Reply at 4.

Defendants assert that Plaintiff's arguments regarding the Labor Code provisions are flawed because there is no allegation that his stock options constituted a "benefit plan" under Section 227 and the Ninth Circuit has been clear that stock options are not "wages" under the under article of the Labor Code that includes Sections 206 and 216. Reply at 5-8.

**III.   ANALYSIS**

    **A.   Subject Matter Jurisdiction**

Pursuant to 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different states." Pursuant to 28 U.S.C. § 1441(b), any civil action of which the district courts have original jurisdiction, except if founded on a claim or right arising under the Constitution, treaties or laws of the United States, "shall be removable only if none of the parties of interest properly joined and served as defendants is a citizen of the State in which such action is brought." Here, Plaintiff Tim Duvall is a citizen of the State of California. Defendants Galt and Eddings are citizens of the State of Texas. Defendant Theragenics is a citizen of the State of Delaware. Because the matter in controversy exceeds the sum of $75,000, exclusive

---

[5] Section 8.05 of the Stock Purchase Agreement provides: "This Agreement shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of Georgia applicable to contracts made and to be performed within that state, and no effect shall be given to any conflict-of-laws principles thereof directing the application of any Law other than the laws of the State of Georgia."

of interest and costs, and Plaintiff and Defendants are citizens of different states and no Defendant is a citizen of California, this court has subject matter jurisdiction under 28 U.S.C. § 1332 and 1441.

### B. Choice of law

A federal district court sitting in diversity applies state substantive law and federal procedural rules. *See Erie R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938). In determining which state's substantive law applies to state law claims, a federal district court applies the choice of law principles of the state in which it sits. *Arno v. Club Med. Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). Under California choice of law principles, California substantive law generally applies unless a "true conflict" is found between the laws of the potentially interested states. *Id.* However, where claims are based on a contract that contains a choice of law provision, the court must apply the law designated by the contractual provision unless (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California public policy or evade a California statute. *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995).

### C. Legal Standard for Rule 12(b)(6) Motion to Dismiss

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In ruling on a motion to dismiss, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 127 S. Ct. 1955, 1969 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id.* at 1965. However, a complaint does not need detailed factual allegations to survive dismissal. *Id.* at 1964. Rather, a complaint need only include enough facts to

state a claim that is "plausible on its face." *Id*. at 1974. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 1965 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

The Court "may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Gordon v. Impulse Mktg. Group, Inc.*, 375 F. Supp. 2d 1040, 1044 (E.D. Wash. 2005) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)). If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. *Id*. at 1044. Furthermore, pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment. *Id*. (citing *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). However, the Court may not take judicial notice of a fact that is "subject to reasonable dispute." *Id*.

### D. Plaintiff's Claims for Breach of Contract (Claim Three) and Implied Covenant of Good Faith and Fair Dealing (Claim Four) against Theragenics

Defendants assert that Plaintiff's contractual claims against Theragenics fail because Plaintiff is not a party to the Stock Purchase Agreement or a third-party beneficiary of the Agreement. The Court agrees.

As a preliminary matter, the Court must address what law should be applied to the determination of whether Plaintiff is a third-party beneficiary in light of the choice of law provision in the Stock Purchase Agreement designating Georgia law as the governing law.[6] As noted above, under California choice-of-law rules, the court must apply the law designated by the contractual provision unless (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would run contrary to a California public policy or evade a California statute. *General Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995). The fact that

---

[6] Plaintiff does not dispute that he is not a party to the Agreement.

11

Theragenics is incorporated in Delaware and its principal place of business is in Georgia is sufficient to establish a "substantial relationship." *See id.* Nor is the Court aware of any California public policy that would be undermined by application of Georgia law. Therefore, the Court concludes that the applicable law in determining whether Plaintiff is a third-party beneficiary is Georgia law. *See Am. Patriot Beneficiary Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.,* 364 F.3d 884, 890 (7th Cir. 2004) (choice of law provision in contract governed plaintiff's third-party beneficiary claim); *Davidson and Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1356 n.15 (6th Cir. 1991) (same); *Canal Ins. Co. v. Lebanon Ins. Agency, Inc.*, 504 F. Supp.2d 113, 119 (W.D. Wa., 2007) (same).

Under Georgia law, a third party has standing to enforce a contract if "it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient." *Northern v. Tobin*, 262 Ga. App. 339, 344 (2003) (citations omitted).

The third party need not be named in the contract. *Id*. Rather, "the dispositive issue is whether the parties' intention to benefit the third party is shown on the face of the contract." *Id*. Where, as here, the contract expressly states that there are no third-party beneficiaries, that provision has been found to defeat contractual claims by a purported third-party beneficiary. *See Kaesemeyer v. Angiogenix, Inc.*, 278 Ga. App. 434, 436 (2006). In *Kaesemeyer*, the plaintiff was the payee under a promissory note that was executed by a pharmaceutical company, NitrOSystems, and later assigned to Angiogenic under an asset purchase agreement between the two companies. *Id*. at 434. The asset purchase agreement specifically listed the promissory note at issue in the case. *Id*. It also contained a merger clause and a provision stating that "no other person shall have any right, benefit or obligation under this Agreement as a third party beneficiary or otherwise." *Id*. at 437. The court held that in light of the merger clause and the express provision stating that there were no third party beneficiaries, the intent of the parties with respect to whether the plaintiff was a third party beneficiary "could scarcely have been more clearly and unambiguously expressed." *Id*. On that basis, the court held that the plaintiff had no standing to assert contractual claims against Angiogenix.

*Kaesemeyer* is directly on point. Here, as in that case, Plaintiff seeks to assert contractual claims under an agreement to which he was not a party and which expressly states that there shall be no third party beneficiaries. As in *Kaesemeyer*, the contract includes a merger clause; and even to the extent that the Stock Purchase Agreement may reflect an intent by Theragenics and Galt to transfer 100% of Galt's company stock derivatives, that intent is not sufficient to confer on plaintiff the status of a third-party beneficiary. In *Kaesemeyer*, the agreement expressly listed the plaintiff's promissory note as one of the assets that had been transferred under the purchase agreement but this was found to be insufficient to overcome the specific third-party beneficiary language in the agreement. Therefore, the Court concludes that Plaintiff's contractual claims against Theragenics fail under Georgia law and that Defendants are entitled to dismissal of those claims.

### E. Plaintiff's Claim for Conversion against Theragenics

Defendants assert that Plaintiff fails to state a claim for conversion against Theragenics because it did not actually take possession of Plaintiff's stock options under the Stock Purchase Agreement; in particular, because Plaintiff's stock options were not included in Schedule 1, they were not transferred to Theragenics. The Court concludes that factual questions remain that preclude dismissal of Plaintiff's conversion claim against Theragenics at this stage of the case.[7]

Under California law, the elements of conversion are: (1) plaintiff's ownership or right to possession of the property; (2) defendant's conversion by wrongful act inconsistent with the property rights of plaintiff; and (3) damages. 317 F.3d 1064, 1069 (9th Cir. 2003). In California, conversion is a strict liability tort, and questions of good faith, lack of knowledge, and motive are ordinarily immaterial. *Id*. The foundation for a conversion claim rests "neither in the knowledge nor intent of the defendant but, instead, rests upon unwarranted interference by a defendant with dominion over property of the plaintiff from which injury to the latter results." *Gonzalez v. Pers. Storage, Inc.*, 56 Cal. App. 4th 464, 476 (1997).

---

[7] In the Motion, Defendants note that Plaintiff listed Theragenics as a defendant on the conversion claim but did not reference Theragenics in the body of that claim. Because Defendants do not seek dismissal of the claim on this basis, it has no impact on the Court's analysis.

Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. *Messeral v. Fulwider*, 199 Cal. App. 3d 1324, 1329 (1988). It is not necessary that there be a physical taking of property; it is only necessary to show an assumption of control or ownership over the property to his own use. *Id.* Nor is it essential that plaintiff be the absolute owner of the property converted; however he must show that he was entitled to immediate possession at the time of conversion. *Id.* (*citing Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 598 (1979)).

Here, Defendants cite the fact that Schedule 1 to the Stock Purchase Agreement did not list Plaintiff's stock options, asserting that it, therefore, could not have interfered with Plaintiff's control or dominion over his stock options as is required to state a claim for conversion. Yet Section 2.02 of the Stock Purchase Agreement also includes a provision under which all rights with respect to Galt stock derivatives are cancelled except as to the compensation to be paid to Galt shareholders under the agreement (which Plaintiff alleges was not paid to him). Because of this provision, Plaintiff alleges, he has been prevented from exercising his rights with respect to his Galt Stock options. In light of these allegations, the Court cannot say, as a matter of law, that Theragenics could not have interfered with Plaintiff's property rights sufficient to establish an act of conversion. Therefore, the Court denies the Motion as to Plaintiff's conversion claim against Theragenics.

### F.  California Labor Code Sections 206 and 216

Defendants argue that Plaintiff's claims against Galt for violation of California Labor Code Section 206[8] and against both Galt and Theragenics for violation of California Labor Code Section

---

[8] Section 206 provides as follows:

> (a) In a case of a dispute over wages, the employer shall pay, without condition and within the time set by this article, all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he may otherwise be entitled to as of any balance claimed.
>
> (b) If, after an investigation and hearing, the Labor Commissioner has determined the validity of any employee's claim for wages, the claim is due and payable within 10 days after receipt of notice by the employer that such wages are due. Any employer having the ability to pay who wilfully fails to pay such wages within 10 days shall, in addition to any other applicable penalty, pay treble amount of any damages accruing to the employee as a direct and foreseeable consequence of such a failure

216[9] fail because Plaintiff's claimed stock options for 100,000 shares of stock of Galt are not "wages" as defined as defined under Section 200 of the California Labor Code. Defendants are correct.

Section 200 of the California Labor Code provides:

> As used in this article: (a) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation. Cal. Lab. Code § 200.

The Ninth Circuit has expressly held that stock options are not wages for California Labor Code purposes. *See Int'l Bus. Machines v. Bajorek*, 191 F.3d 1033, 1039 (9th Cir. 1999); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1132 (9th Cir. 2002). In *Bajorek*, the court reasoned that stock options are not wages because their value is not "fixed or ascertainable" and therefore, they do not constitute "amounts" as that word is used in Section 200. 191 F.3d at 1039. In *Falkowski*, the Ninth Circuit reiterated this point, affirming dismissal of a claim asserted under California Labor Code Section 216 (one of the provisions invoked by Plaintiff here) on the basis that the claim was asserted on the basis of stock options and "options are not wages." 309 F.3d at 1132.

---

to pay.

Cal. Lab. Code § 206.

[9] Section 216 provides as follows:

> In addition to any other penalty imposed by this article, any person, or agent, manager, superintendent, or officer thereof is guilty of a misdemeanor, who:
>
> (a) Having the ability to pay, wilfully refuses to pay wages due and payable after demand has been made.
>
> (b) Falsely denies the amount or validity thereof, or that the same is due, with intent to secure for himself, his employer or other person, any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay, or defraud, the person to whom such indebtedness is due.

Cal. Lab. Code § 216.

15

Plaintiff's assertion that these cases do not apply is unavailing. First, while Plaintiff is correct that the court in *Bajorek* relied, in part, on the purposes underlying California Labor Code Section 221, the court also looked to the language of California Labor Code Section 200. As Section 200 provides a definition of "wages" for the entire article, it is reasonable to read *Bajorek*'s holding as applying to California Labor Code Sections 206 and 216. Indeed, that is how the Ninth Circuit itself interpreted *Bajorek* when in *Falkowski* it affirmed dismissal of a claim under Section 216 on the basis of the holding in *Bajorek*.

Second, Plaintiff has not established that *Bajorek* does not accurately predict how the California Supreme Court would rule on this issue.[10] In support of this assertion, Plaintiff relies heavily upon *Woods v. Fox Broad. Sub., Inc.*, 129 Cal. App. 4th 344 (2005). In that case, the court held that dismissal on the pleadings of a claim under California Labor Code Section 206.5, which precludes an employer from requiring an employee to sign a release as a condition of receiving wages owed, was not appropriate, even though the claim was based on stock option agreements. *Id*. at 474. In reaching this conclusion, the court acknowledged the holding in *Bajorek* but declined to address whether it was correctly decided. *Id*. Rather, the court concluded that dismissal was premature because there were "factual issues concerning the reasons why [the plaintiffs] were awarded [the stock options] and the methods by which they were determined." *Id*. It is not clear to this Court, however, why these factual questions would be material under *Bajorek* and the *Woods* court failed to offer any explanation of its reasoning.

Plaintiff suggests that the *Woods* court was drawing a distinction between stock options that are "compensatory" and those that are not. However, that distinction does not square with the Ninth Circuit's approach in *Bajorek*. In that case, it was undisputed that the stock options were "compensatory" in the sense that they were offered as an incentive for the plaintiff to continue his employment with the company. *See* 191 F.3d at 1096. Yet the court nonetheless concluded that the

---

[10] In his brief, Plaintiff states that *Bajorek* does not accurately predict how the California courts of appeal would rule. The correct test, however, is what the California Supreme Court would rule. *See Westlands Water Dist. v. Amoco Chem. Co.*, 953 F.2d 1109, 1111 (9th Cir.1991) ("In a diversity case, where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it").

16

stock options were not wages. In fact, nothing in the reasoning of *Bajorek* suggests that the distinction between "compensatory" and non-compensatory stock options is a meaningful one under the circumstances here. Accordingly, the Court declines to follow the approach taken in *Woods*. Nor is it persuaded that *Woods* supports the conclusion that *Bajorek* was wrongly decided.

Accordingly, Plaintiff's claims under California Labor Code Sections 206 and 216 are dismissed as to all Defendants.

### G. California Labor Code Section 227

Defendants argue that Plaintiff's claim against Galt for violation of Section 227[11] should be dismissed because Plaintiff has not alleged that Galt failed to make "payments to a health or welfare fund, pension fund or vacation plan, or other such plan for the benefit" of employees, as required under that provision. The Court agrees. Plaintiff has not pointed to any "plan" whatsoever, or to any authority suggesting that stock options offered to an individual employee fall within the ambit of this provision. Therefore, this claim is dismissed as to all Defendants.

### H. Plaintiff's Claim of Promissory Fraud Against Galt and Eddings

Defendants claim that Plaintiff's claim for promissory fraud fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). The Court disagrees.

In a diversity action, state law governs the substantive elements of a claim that must be

---

[11] Section 227 of the California Labor Code provides:

> Whenever an employer has agreed with any employee to make payments to a health or welfare fund, pension fund or vacation plan, or other such plan for the benefit of the employees, or a negotiated industrial promotion fund, or has entered into a collective bargaining agreement providing for such payments, it shall be unlawful for such an employer willfully or with intent to defraud to fail to make the payments required by the terms of any such agreement. A violation of any provision of this section where the amount the employer failed to pay into the fund or funds exceeds five hundred dollars ($500) shall be punishable by imprisonment in the state prison for a period of not more than five years or in the county jail for a period of not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both such imprisonment and fine. All other violations shall be punishable as a misdemeanor.

Cal. Lab. Code § 227.

17

alleged while federal law governs the sufficiency of the pleadings. *See, e.g., Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (analyzing sufficiency of plaintiff's state law fraud claim with reference to elements of fraud under California law and pleading requirements for fraud under Fed. R. Civ. P. 9(b)). The indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages. *Bank of the West v. Valley Nat'l Bank of Arizona*, 41 F.3d 471, 477 (9th Cir.1994) (*quoting Hackethal v. Nat. Cas. Co.*, 189 Cal. App. 3d 1102, 234 (1987)).

Where a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires specific allegations regarding the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (*citing Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). To comply with Rule 9(b), allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (*quoting Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Here, Plaintiff's Complaint specifically alleges the time of the alleged misrepresentations, including specific dates between February 9, 2002, and August 2, 2006. It also provides specific allegations as to the content of the alleged misrepresentations. The Court concludes that Plaintiff's allegations are sufficiently detailed to satisfy the requirements of Rule 9(b).

**IV.  CONCLUSION**

For the reasons stated above, the Motion is GRANTED in part and DENIED in part. The following claims are dismissed with prejudice: 1) Plaintiff's contractual claims against Theragenics (Claims Three and Four) are dismissed; 2) Claim Five is dismissed as to all Defendants to the extent

it is based on California Labor Code Sections 206, 216, and 227; and 3) Claim Six is dismissed as to all Defendants.

IT IS SO ORDERED.

Dated: November 27, 2007

JOSEPH C. SPERO
United States Magistrate Judge